Abelino ALVIAR, Individually and as Next Friend of Linda Alviar, Appellants,

v.

Raymond Remigio GARZA et al., Appellees.

No. 3923.

Court of Civil Appeals of Texas.

Eastland.

Jan. 29, 1965.

Rehearing Denied March 12, 1965.

Perkins, Floyd, Davis & Oden, Alice, for appellants.

Keys, Russell, Keys & Watson, Corpus Christi, Lloyd, Lloyd & Dean, Alice, for appellees.

WALTER, Justice.

Abelino Alviar individually and as next friend for his daughter Linda Alviar, filed suit against Raymond Remigio Garza, a minor, and his father Remigio M. Garza to recover damages for personal injuries sustained by the minor plaintiff. Linda, a girl eleven years of age was crossing Almond Street in Alice, Texas, and was struck by an automobile driven by the defendant Raymond Remigio Garza. Based on the verdict, judgment was rendered that plaintiffs take nothing. The plaintiffs have appealed.

Raymond Remigio Garza was called as an adverse witness and testified substantially as follows: On April 17, 1962, when I was involved in an accident on Almond Street here in Alice, Texas, I was 17 years old. After attending a meeting at the Catholic school, I started to the Williams Drive-Inn to get a Coke. I was operating my father's 1957 Chevrolet. I had some friends with me at the time. When I came to the intersection of Dewey and Almond Street, I turned and proceeded north on Almond. The first street I crossed was Cactus which runs east and west. As I entered this intersection I saw a sign "Do not enter, one-way". After I passed Cactus Street going north on Almond, I met a truck which was proceeding south. I was traveling about twenty-five miles per hour. The truck was going with the one way signs on Almond and I was going in the opposite direction. I first saw Linda when she was in the middle of Almond Street. This was at a point approximately 19 or 20 feet south of the intersection of Almond and Hill Street which is an east and west street that intersects Almond. She was running from the west to the east side when I first saw her. She was angling across the street. When I saw her I immediately applied my brakes. I laid down about 18 feet of skid marks. Immediately before the collision Linda threw her arms up in front of her face and continued running. Her body came in contact with my automobile on the left front fender, about a foot back from the front of the car. No damage was done to my automobile and I didn't find blood on the car. When I saw her in the middle of the street she was running out from behind the truck. I had noticed this truck as it left a little store on the corner at the intersection of Hill and Almond Street. This RC Cola truck was standing still when I first saw it. I didn't see Linda or any other children around the truck in this area when I first saw the truck. The truck was parked parallel with Hill Street, facing east. The truck had completed its turn and headed south on Almond Street before Linda ran into the side of my station wagon. At the time I first saw Linda the front bumpers of the truck were about even with the front bumpers of my

car. At this point there was about three feet between us. Linda was coming out from behind the truck at this point. At the time I first saw Linda she was looking in a northerly direction. She never did look toward my car until just before she ran into the side of it. I could not tell how far Linda was back from the rear end of the truck when I first saw her but I would estimate she was a foot and a half or two feet. I parked my car and came back to see about Linda. Her body was lying in the intersection of Hill and Almond about 23 feet from the spot where her body came in contact with my car. An ambulance was called and Linda was taken to the hospital. My father and I went to the hospital.

Linda was called as a witness but she remembered nothing about the accident.

Sam Herrera testified substantially as follows: On April 17, 1962, I was a witness to an accident near the intersection of Hill and Almond Street here in Alice. I was parked in front of my father's house at the time. The first thing I saw was two children running right behind a truck. As well as I can remember the two children were real close together and they were pretty well keeping up with the truck which was proceeding south. I also saw a car approaching from the opposite direction. Just before the accident occurred I saw the children as they started to cross the street. They started to go across Almond Street in an easterly direction. At this point I would say the truck and the car were approximately parallel. I saw the children running behind the truck while it was in the turn here until they continued to run into the path of the car coming toward it. I would say the truck was traveling about five miles per hour.

The court defined negligence as the failure to use "ordinary care", and "ordinary care" as applied to the minor, Linda, as such "care as an ordinarily prudent child of her age, intelligence, experience and capacity would have exercised under the same or similar circumstances."

The jury answered that Linda kept a proper lookout for her own safety; that Almond Street had been designated as a one-way street for southbound traffic only; that Raymond Garza was negligent in proceeding north on Almond Street and such negligence was a proximate cause of Linda's injuries. Issues 14, 15 and 16 and the jury's answers are as follows:

"SPECIAL ISSUE NO. 14

"Do you find from a preponderance of the evidence that just before the accident Linda Alviar ran from immediately behind the soda-water truck?

"Answer 'Yes' or 'No'.

"We, the Jury, answer <u>Yes</u>

"If you have answered Special Issue No. 14, 'Yes', then answer Special Issue No. 15; otherwise do not answer same.

"SPECIAL ISSUE NO. 15

"Do you find from a preponderance of the evidence that such action on her part, if you have so found, was negligence?

"Answer 'Yes' or 'No'.

"We, the Jury, answer <u>Yes</u>

"If you have answered Special Issue No. 15, 'Yes', then answer special issue No. 16; otherwise do not answer same.

"SPECIAL ISSUE NO. 16

"Do you find from a preponderance of the evidence that such neglige, if you have so found, was a proximate cause of the accident?

"Answer 'Yes' or 'No'.

"We, the Jury, answer <u>'Yes'</u>."

We granted appellants' motion for permission to re-brief their points. However, no amended briefs have been filed. We have reconsidered point number 4 and believe that when it is considered in the light of the statement and argument it presents a point on the insufficiency of the evidence

to support the jury's answer that Linda was negligent. Fambrough v. Wagley, 140 Tex. 577, 169 S.W.2d 478. Our order granting appellees' motion to strike points 1, 2, 3, 4 and 6 is set aside insofar as point number 4 is concerned.

In appellants' motion to disregard certain findings of the jury, which was attached to and made a part of their amended motion for a new trial, they asserted that the answer to special issue number 15 should be disregarded by the court because there was insufficient evidence to support such finding.

■ We have considered all of the evidence, some of which is set out above, in the light of the court's definition of ordinary care as applied to a child of Linda's age and find that the evidence is insufficient to support the jury's answer to issue number 15.

■ The jury found that Linda was negligent in not crossing the street at the regular crosswalk but that such negligence was not a proximate cause. Appellees contend in one of their crosspoints that the jury's negative finding on proximate cause should be disregarded because such negligence was a proximate cause as a matter of law. We find no merit in this contention. The evidence does not conclusively show that the proximate cause issue should have been answered in the affirmative. It was therefore the duty of the court to submit the issue to the jury.

■. Appellees also contend that the "one-way" signs on Almond Street were not placed there by proper authority. Article 6701d–3 of Vernon's Annotated Civil Statutes provides that proof by either party of the existence of one-way street signs shall constitute prima facie proof of all facts necessary to prove the proper lawful installation of such signs at such place. It was conclusively established that the one-way signs for southbound traffic on Almond Street had been installed at the time of this unfortunate occurrence. Raymond Garza testified that he saw the signs. Our Supreme Court in Gann v. Keith, 151 Tex. 626, 253 S.W.2d 413, at page 417, said:

"As a general rule, criminal statutes do not create civil liability, and since this Court has held that although a penal statute may be held void for lack of certainty, yet it has been held that it may constitute a rule of civil conduct."

We hold that the city ordinance or resolution created a rule of civil conduct regardless of, whether it was passed in strict compliance with the city charter. The appellees' crosspoints have been considered and are overruled.

The judgment is reversed and the cause is remanded.